UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ROBERT SCHINDLER | CIVIL ACTION |
| VERSUS | NO. 17-13013 |
| DRAVO BASIC MATERIALS COMPANY, INC. | SECTION "N" (2) |

## ORDER AND REASONS

Presently before the Court is Defendant Dravo Basic Materials Company, Inc.'s FRCP 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction (Rec. Doc. 11). Plaintiff Robert Schindler has filed a response in opposition (Rec. Doc. 12), to which Defendant Dravo Basic Material Company, Inc. has replied. *See* Rec. Doc. 15. Having carefully considered the parties' supporting and opposing submissions, the record, and the applicable law, **IT IS ORDERED** that the motion is **DENIED** for the reasons stated herein.

### I. BACKGROUND

The instant matter arises out of Plaintiff Robert Schindler's ("Schindler") personal injuries, specifically mesothelioma, allegedly caused, in part, by the exposure to asbestos while working in the engine room of a vessel called DRAVO, which was owned and operated by Defendant Dravo Basic Materials Company, Inc., formerly known as Radcliff Materials, Inc. ("Dravo"). (Rec. Doc. 1 at p. 1). Schindler alleges that he worked upon the DRAVO in 1973 for three months while the DRAVO was "operating in the navigable waters of Lake Pontchartrain." *Id*. at p. 2.

On November 21, 2017, Schindler filed his Seaman's Complaint, invoking a cause of action under the Jones Act and seeking to recover damages for:

1

> [P]ast and future physical pain and suffering; physical disability, impairment, and inconvenience; the effect of Plaintiff's injuries and inconvenience on the normal pursuits and pleasures of life; past and future mental anguish and feelings of economic insecurity caused by disability; income loss in the past; impairment of earning capacity or ability in the future, including impairment of Plaintiff's earning capacity due to his physical condition; and past and future medical expenses.

*Id*. at p. 6-7. Thereafter, Dravo filed the instant motion, seeking to dismiss this action for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). *See* Rec. Doc. 11. Dravo specifically argues that this Court lacks both general and specific jurisdiction. (Rec. Doc. 11-1 at p. 5-6). First, Dravo argues that it was not organized under Louisiana law and does not have its principal place of business in Louisiana, so it is inappropriate for this Court to exercise general jurisdiction. *Id*. at p. 10. Next, Dravo asserts that it would be unconstitutional for this Court to exercise specific jurisdiction because it has not had any contacts with Louisiana in almost a quarter of a century, and this Court's exercise of jurisdiction over it would be unreasonable. *Id*. at p. 13-20. In support of its argument that this Court should not exercise specific jurisdiction because its contacts with Louisiana are remote or "historical," Dravo urges the Court to extend certain temporal limitations that courts consider in general jurisdiction analyses to the Court's assessment of specific jurisdiction. *Id*. at p. 13-16. Further, Dravo argues that even if the Court finds that it has sufficient minimum contacts with Louisiana to establish specific jurisdiction and that Schindler's claim arises out of such contacts, exercising jurisdiction would be unreasonable. *Id*. at p. 17.

Is his opposition memorandum, Schindler only responds to Dravo's arguments regarding specific jurisdiction. *See* Rec. Doc. 12. Specifically, Schindler addresses Dravo's argument that this Court should appropriate arguments relevant to general jurisdiction to a specific jurisdiction analysis, stating that "[b]lending the analysis of these two different types of jurisdiction would

2

contravene applicable legal precedent and would, on the facts of this case, result in a serious miscarriage of justice." *Id*. at p. 1. Further, Schindler argues that Dravo does have the requisite minimum contacts with Louisiana to confer specific jurisdiction. *Id*. at p. 2. Additionally, Schindler discounts Dravo's arguments relevant to the alleged unreasonableness of this Court exercising personal jurisdiction over the instant matter. *Id*. at p. 7.

In its reply memorandum in support of its motion, Dravo addresses Schindler's arguments relevant to its contacts with Louisiana. (Rec. Doc. 15 at p. 3). Specifically, Dravo argues that Schindler's citation to cases where Dravo was a party was evidence of minimum contacts is improper. *Id*. at p. 3-6. Moreover, Dravo assets that none of the cases cited by Schindler concern a defendant's contacts with the forum state that are "decades removed from the filing of suit." *Id*. at p. 7. Additionally, Dravo reiterates its argument that any exercise of jurisdiction by this Court would be unreasonable. *Id*. at p. 10-11.

## **II. LAW AND ANALYSIS**

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing jurisdiction by a *prima facie* showing. *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). In its jurisdictional determination, the Court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). The Court "must resolve all undisputed facts submitted by the plaintiff, as well as facts contested in the affidavits, in favor of jurisdiction." *Luv N' care*, 438 F.3d at 469. "When a plaintiff makes its *prima facie* case that the defendant has 'minimum contacts' with the forum state, the burden of proof shifts to the defendant to show that the exercise of jurisdiction would be unreasonable." *Id.* at 473 (citation omitted).

Before the Court may exercise personal jurisdiction over a nonresident defendant, the long-arm statute of the forum state must confer upon it the authority to do so. *See Latshaw* v. *Johnson*, 167 F.3d 208, 211 (5th Cir. 1999). In addition, the exercise of jurisdiction must not exceed the boundaries of the Due Process Clause of the Fourteenth Amendment. *Id.* In Louisiana, the long-arm statute extends jurisdiction to the full limits of due process. *Planet Beach Franchising Corp. v. C3Ubit, Inc.*, No. Civ.A. 02-1859, 2002 WL 1870007 at *2 (E.D. La. Aug. 12, 2002). Therefore, the Court's focus in the present matter is whether the exercise of jurisdiction over Dravo would comport with the constitutional requirements of due process. *See id.*

Due process is satisfied when (1) the defendant has purposefully availed itself of the benefits and protections of the forum by establishing "minimum contacts" with that state, and (2) the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The "minimum contacts" inquiry is fact intensive, and the touchstone is whether "the defendant purposefully directed his activities towards the forum state, such that he could reasonably foresee being haled into court there." *Southern Marsh Collection, LLC. v. C.J. Printing Inc.*, Civil Action No. 14–495, 2015 WL 331919 at *1 (M.D. La. Jan. 26, 2015) (citing *Luv N' Care Ltd.*, 438 F.3d at 470). Minimum contacts may give rise either to "specific" personal jurisdiction or "general" personal jurisdiction. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017).

In the instant matter, Dravo argues that this Court does not possess general jurisdiction over it, and Schindler does not dispute this Court's lack of general jurisdiction in its opposition memorandum. *See* Rec. Doc. 12. Thus, the Court will focus its analysis as to whether it possesses specific jurisdiction. A court has specific personal jurisdiction over a nonresident defendant when

the litigation arises from the defendant's minimum contacts with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). The Fifth Circuit consolidated the specific jurisdiction inquiry into a three-part analysis:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Luv N' care*, 438 F.3d at 469 (citations omitted). Because there must be an affiliation between the forum and the underlying controversy, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol-Myers*, 137 S. Ct. at 1780.

Dravo argues that this Court lacks specific jurisdiction because it has not had any contacts with Louisiana in almost a quarter of a century, and the exercise of jurisdiction over it is unreasonable. (Rec. Doc. 11-1 at p. 13). Specifically, Dravo contends that while Schindler alleges that he performed work for Dravo during shell-dredging operations in Lake Pontchartrain forty-five years ago, such remote contacts should not and cannot suffice to meet his burden of proving that Dravo has minimum contacts in Louisiana. *Id*. at p. 14. Dravo posits that this Court's analysis of its alleged "minimum contacts" with Louisiana, which would confer specific jurisdiction to this Court, should be limited to a reasonable period of time. *Id*. In support of this argument, Dravo discusses how Courts "consider contacts between the defendant and forum states going back a 'reasonable number of years' prior to the filing of a plaintiff's Complaint to determine whether the requisite minimum contacts exist" in their analysis of *general jurisdiction*. *Id*. Dravo maintains that "[b]ecause the Fourteenth Amendment limits the scope of jurisdiction regardless of whether general jurisdiction is at issue, the same temporal limitations on the minimum contacts inquiry

5

should apply regardless of what subcategory of jurisdiction is under consideration." *Id*. at p. 15. However, Dravo does not cite a single authority to support its proposition that the Court should extend such temporal limits placed on its analysis of general jurisdiction to its analysis of specific jurisdiction and argues that this is an issue of first impression.

The Court declines to place temporal limitations on its assessment of Dravo's minimum contacts with Louisiana in the context of specific jurisdiction. As the Supreme Court noted in its *Bristol-Myers* opinion after discussing general jurisdiction, "[s]pecific jurisdiction is very different." 137 S. Ct. at 1780. "In order for a court to exercise specific jurisdiction over a claim, there must be an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.." *Id*. (quotation marks and citation omitted). Thus, the Court does not find it appropriate to apply temporal limitations that are considered within a general jurisdiction analysis to its analysis of specific jurisdiction.

Further, the Court finds that Schindler has satisfied his burden in proving that Dravo has sufficient minimum contacts with Louisiana at the time of his alleged exposure to asbestos. Specifically, Schindler alleges that he was exposed to asbestos "while working in the engine room of a dredging vessel called the DRAVO which was owned and operated by Defendant Dravo Basic Materials Company, Inc., formerly known as Radcliff Materials, Inc." (Rec. Doc. 1 at p. 1). In addition, Schindler alleges that discovery in prior litigation revealed that "the only time Mr. Schindler worked in an engine room of a vessel, where one was constantly exposed to asbestos, was in the Spring of 1973, during his three-month tenure on the DRAVO, operating in the navigable waters of Lake Pontchartrain." *Id*. at p. 2. Schindler's opposition memorandum further notes that Dravo admits in its motion that it "was engaged in the business of clam shell dredging

in Lake Pontchartrain. But in 1990, shell dredging in the Lake was banned." *See* Rec. Doc. 11-1 at p. 8. Thus, Dravo "purposefully availed" itself of the privileges of conducting activities within Louisiana. Moreover, Schindler's alleged exposure to asbestos while working on the DRAVO arises out of Dravo's dredging in Lake Pontchartrain or "forum-related contacts."

Therefore, the burden shifts to Dravo to demonstrate that the exercise of jurisdiction would be unreasonable. *See Luv N' care*, 438 F.3d at 473. In conducting a fairness analysis, the Court examines:

> (1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies.

*Id*. (citing *Felch v. Transportes Lar–Mex SA De CV,* 92 F.3d 320, 324 (5th Cir.1996)). In arguing that the exercise of jurisdiction would be unreasonable in the instant matter, Dravo argues that: (1) Dravo is an inactive company whose sole existence is in Pennsylvania, so anything required of it in response to litigation is an unusual burden; (2) Louisiana has no real interest in this claim since Schindler is a California citizen, Dravo has no modern connection to Louisiana, and the claim at issue arises under federal law; (3) Schindler has no real interest in litigating his claim in Louisiana since he has no real connection with Louisiana other than "his passing through during a brief period over forty-five years ago;" (4) The interests of the interstate judicial system in the efficient administration of justice are better served by litigating this case in Pennsylvania, where Dravo may have documents and its corporate representative resides; and (5) Louisiana's shared interest with Pennsylvania is better served by litigating this case in Pennsylvania. (Rec. Doc. 11-1 at p. 18-20).

However, the Court disagrees that its exercise of jurisdiction would be unreasonable in the instant matter as to offend traditional notions of fair play and substantial justice. Dravo argues that

the burden of litigating in Louisiana would be unreasonable, stating that documents and a corporate representative are located in Pennsylvania. (Rec. Doc. 11-1 at p. 18). However, the Court is not convinced that such burden would be unreasonable and notes that Dravo has retained local counsel in this matter. *See Orpheum Prop., Inc. v. Coscina*, No. CV 17-6480, 2018 WL 1518471, at *10 (E.D. La. Mar. 28, 2018) ("Courts routinely find that employment of local counsel lessens the burden on a nonresident defendant."). Additionally, the Court notes that Louisiana has an interest in a claim that allegedly resulted from exposure to asbestos while a person was working for a company that was performing shell dredging within the state. Moreover, Schindler also has an interest in litigating his claim in Louisiana, where he was allegedly exposed to asbestos over the course of a few months.

With regard to the next two factors, the Court is not convinced by Dravo's arguments that Pennsylvania is the appropriate jurisdiction. In support of these two factors, Dravo's sole argument is that Pennsylvania is where documents or evidence may be located. (Rec. Doc. 11-1 at p. 20). However, the Court finds that both Louisiana and Pennsylvania could efficiently litigate the instant matter, and the location of unspecified documents in Pennsylvania does not cause this factor to weigh in favor of litigating this case in another district. Moreover, Defendant's argument that evidence is located in Pennsylvania does not establish that the "shared interest of the several states in furthering fundamental social policies" is better served by litigating this case in Pennsylvania. Thus, the Court finds that Dravo has not met its burden in proving that this Court's exercise of specific jurisdiction over the instant matter is unreasonable under the circumstances.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant Dravo Basic Materials Company, Inc.'s FRCP 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction (Rec. Doc. 11) is **DENIED.**

New Orleans, Louisiana, this 18th day of May 2018.

_____
**KURT D. ENGELHARDT**
**UNITED STATES JUDGE**