UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ROBERT SCHINDLER                                    CIVIL ACTION

VERSUS                                              NO. 17-13013

DRAVO BASIC MATERIALS                              SECTION "R" (2)
COMPANY, INC.

## <u>ORDER AND REASONS</u>

Before the Court are (1) defendant's motion for summary judgment;[1] (2) plaintiff's motion for partial summary judgment;[2] (3) one motion to exclude expert testimony filed by the plaintiff;[3] and (4) four motions to exclude expert testimony filed by the defendant.[4]  The Court excludes the causation opinions that plaintiff's experts Dr. Robert Harrison and Dr. David Tarin seek to offer at trial because they are not reliable under the Federal Rules of Evidence.  Without these expert opinions, plaintiff cannot establish the causation element of his claim at trial.  Defendant's motion for summary judgment is therefore granted.  All of the other motions are dismissed as moot.

---

[1]     R. Doc. 48.
[2]     R. Doc. 46.
[3]     R. Doc. 45.
[4]     R. Doc. 49; R. Doc. 50; R. Doc. 51; R. Doc. 52.

## I.    BACKGROUND

This case arises from plaintiff Robert Schindler's alleged exposure to asbestos while employed by Radcliff Materials, the predecessor company to defendant Dravo Basic Materials Company, Inc (DBMC).[5]   Plaintiff was employed by Radcliff from February to April 1973.[6]   During this period, plaintiff worked a "14 days on/7 days off" schedule aboard the AVOCET, a dredge that was collecting clam shells in Lake Pontchartrain.[7]   In total, he worked on the AVOCET for approximately six weeks during this three month period.[8]   Plaintiff states that he worked in the engine room of the dredge as an oiler, and that his primary responsibilities were to record engine gauge readings, change engine filters, and assist others with minor repairs.[9]   Plaintiff worked as a merchant marine aboard many different vessels, and for many different companies, from 1966 until 2002.[10]

Plaintiff alleges that in October 2016 he was diagnosed with mesothelioma.[11]   Plaintiff previously filed a products liability suit against 42

---

[5]      R. Doc. 48-2 at 1 ¶ 1; R. Doc. 64-13 at 1.
[6]      R. Doc. 48-2 at 3 ¶ 8; R. Doc. 64-13 at 1; R. Doc. 58 at 3.
[7]      R. Doc. 48-2 at 3 ¶ 9; R. Doc. 64-13 at 1.
[8]      R. Doc. 64 at 1.
[9]      R. Doc. 48-2 at 3 ¶ 10; R. Doc. 64-13 at 1.
[10]      R. Doc. 48-2 at 2 ¶ 6; R. Doc. 64-13 at 1.
[11]      R. Doc. 1 at 1 ¶ 2.

defendants in California state court, including DBMC.[12]  In that suit, plaintiff alleged that each of the defendants was responsible for exposing him to asbestos over his career as a merchant marine seaman, causing his disease.[13] Plaintiff voluntarily dismissed DBMC from the California suit on personal jurisdiction grounds.[14]  Plaintiff eventually settled his claims in that suit with the remaining defendants.[15]

On November 21, 2017, plaintiff filed this Jones Act personal injury suit against DBMC.[16]  Plaintiff alleges that DBMC negligently exposed him to asbestos during his six-week stint aboard the AVOCET, which caused him to contract mesothelioma.[17]  To support this claim, plaintiff has retained several experts to offer testimony at trial.[18]  Two of these experts are Dr. Robert Harrison and Dr. David Tarin.[19]  Both seek to testify at trial that plaintiff's alleged asbestos exposure while working on the AVOCET is both a general

---

[12]     R. Doc. 48-2 at 2 ¶ 3; R. Doc. 64-13 at 1.
[13]     *Id.*; R. Doc. 1 at 1 ¶ 2.
[14]     R. Doc. 48-2 at 2 ¶ 4; R. Doc. 64-13 at 1.
[15]     R. Doc. 48-2 at 2 ¶ 5; R. Doc. 64-13 at 1.
[16]     *See* R. Doc. 1.
[17]     *Id.* at 5-6 ¶¶ 19-21.
[18]     *See* R. Doc. 49; R. Doc. 50; R. Doc. 51; R. Doc. 52.
[19]     R. Doc. 50-17; R. Doc. 52-8.

and specific cause of his disease.[20]   DBMC moves to exclude plaintiff's experts from testifying at trial, and also moves for summary judgment.[21]

## II.   LEGAL STANDARD

### A.   Admissibility of Expert Testimony

A district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702, which governs the admissibility of expert testimony.  *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).   Rule 702 provides that a witness "qualified as an expert by knowledge, skill, experience, training, or education" may provide opinion testimony when "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  To be admissible, Rule 702 requires that (1) the testimony be based on sufficient facts or data, (2) the testimony be the product of reliable principles and methods, and (3) the witness apply the principles and methods reliably to the facts of the case.  *Id.*

---

[20]    *Id.*
[21]    R. Doc. 48; R. Doc. 50; R. Doc. 52.

In *Daubert v. Merrell Dow Pharmaceuticals, Incorporated*, the Supreme Court held that Rule 702 requires the district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. 579, 589 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-48 (1999) (clarifying that the *Daubert* gatekeeping obligation applies to all forms of expert testimony). The Court's gatekeeping function involves a two-part inquiry. First, the Court must determine whether the expert testimony is reliable. The party offering the testimony has the burden to establish reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). The Court must assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 590. The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation. *See id.* The Court's inquiry into the reliability of expert testimony is flexible and necessarily fact-specific. *See Seatrax, Inc.*, 200 F.3d at 372.

Second, the Court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact to understand the evidence. *See Daubert*, 509 U.S. at 591. This is primarily an inquiry into the relevance of the expert testimony. *See id.*; *see*

*also Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). Expert testimony is unnecessary if the court finds that "the jury could adeptly assess [the] situation using only their common experience and knowledge." *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990).

But a court's role as a gatekeeper does not replace the adversary system. *Daubert*, 509 U.S. at 596. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

### B.    Summary Judgment

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material

fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (internal citation omitted). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or by "showing that the moving party's evidence is so sheer that it may not

persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 *mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." (quoting *Celotex*, 477 U.S. at 322)).

## III.  DISCUSSION

### A.    Motion to Exclude Dr. Robert Harrison's Testimony

This is a toxic torts case in which plaintiff alleges that he was exposed to asbestos while working in the engine room of a dredge, and that this

exposure caused his mesothelioma.[22]  Accordingly, plaintiff must show general causation—that asbestos can cause mesothelioma—and specific causation—that his exposure while employed by DBMC caused his mesothelioma.  *See Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007) ("General causation is whether a substance is capable of causing a particular injury or condition in the general population, while specific causation is whether a substance caused a particular individual's injury.").  A court may admit specific-causation evidence only after the plaintiff has produced admissible evidence on general causation.  *See id.* ("[I]f it concludes that there is admissible general-causation evidence, the district court must determine whether there is admissible specific-causation evidence.").  Plaintiff's expert Dr. Robert Harrison, an Occupational and Environmental Health Expert, seeks to offer at trial both general and specific causation opinions.[23]  DBMC does not seriously dispute Dr. Harrison's general causation opinion that asbestos exposure can cause mesothelioma.[24] DBMC instead argues that Dr. Harrison's specific causation opinion is unreliable and should be excluded.

---

[22]   R. Doc. 1 at 1 ¶ 2.
[23]   R. Doc. 50-16; R. Doc. 50-17.
[24]   *See* R. Doc. 50-16 at 59.

Dr. Harrison offered his causation opinion in a bare-bones report dated October 5, 2018.[25] He states in the report that plaintiff's "mesothelioma is a result of cumulative exposure to asbestos fibers from 1955 to 1988."[26] Dr. Harrison conceded during his deposition that he wrote this report in connection with a workers' compensation case in California in which plaintiff is involved.[27] He further conceded that at the time he wrote his report, he was not aware this case was pending in Louisiana.[28]

Dr. Harrison expounded on his causation opinion considerably during his deposition. He testified that by stating in his report that plaintiff's illness was due to "cumulative exposure to asbestos fibers," he meant that "each and every one" of plaintiff's exposures "increase[ed] his risk and contribut[ed] to the development of his mesothelioma."[29] He then offered—for the first time[30]—an opinion that plaintiff's time aboard the AVOCET is a specific

---

[25]   *See* R. Doc. 50-17.
[26]   *Id.* at 11.
[27]   R. Doc. 50-16 at 18.
[28]   *Id.* at 18-19.
[29]   *Id.* at 64-65.
[30]   DBMC argues that the Court should exclude this opinion pursuant to the Court's Pretrial Notice. R. Doc. 84 at 5. The Pretrial Notice states that unless good cause is shown, experts will not be "permitted to testify to opinions not included" in timely-filed reports. R. Doc. 20-1 at 7-8. This testimony is also potentially excludable under Federal Rules of Civil Procedure 26(a)(2)(B) and 37(c)(1). To exclude testimony in this situation, courts are instructed to consider the importance of the testimony at-issue and potential prejudice in allowing the testimony. *See Geiserman v.*

10

cause of his mesothelioma.  He stated that plaintiff's "six-week exposure aboard the AVOCET is a contributing factor . . . to his cumulative asbestos fiber exposure, and therefore contributed to his risk of developing mesothelioma."[31]  He went on to state that even if plaintiff had no other exposure, his six weeks on the AVOCET alone would be a "substantial contributing factor to his mesothelioma."[32]  When asked for what support exists for that opinion, Dr. Harrison cited a 2015 paper from Dr. Steven Markowitz.[33]  That paper states that "at any level of occupational asbestos exposure, adding additional occupational exposure to asbestos increases the likelihood of developing malignant mesothelioma."[34]

It is evident that when formulating his opinions, Dr. Harrison was aware of very little concerning plaintiff's alleged exposure aboard the AVOCET.  The only information in his report referring to plaintiff's time on the dredge is one sentence in a larger section recounting plaintiff's work

---

*MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990).  DBMC has made no showing that it has been prejudiced by Dr. Harrison's delay in disclosing this opinion until his deposition.  In any event, the Court is excluding Dr. Harrison's specific causation opinion because it is unreliable, so DBMC's argument is moot.

[31]    R. Doc. 50-16 at 65.
[32]    *Id.*
[33]    *Id.* at 66-70; R. Doc. 58-15.
[34]    R. Doc. 50-16 at 69-71; R. Doc. 58-15 at 3-4.

history.[35]  Specifically, he states in his report that in 1973 plaintiff "worked under asbestos insulated pipes that vibrated, depositing asbestos containing dust on and in close proximity."[36]  Plaintiff explains in his opposition to DBMC's motion that this sentence comes from plaintiff's sworn interrogatories in his California litigation.[37]  But those interrogatories offer very little additional information about the circumstances of plaintiff's alleged exposure aboard the AVOCET.  They state, in relevant part:

> Plaintiff worked as an oiler on a diesel powered ship that dredged for shells.  Plaintiff worked in the engine room.  Plaintiff operated the engine and cleaned the engine room.  Plaintiff worked under asbestos insulated pipes that vibrated, depositing asbestos containing dust on and in close proximity to plaintiff.  Plaintiff changed air cleaners and oil filters, applied machine oil, and used industrial solvents.  Plaintiff currently contends he was exposed to asbestos and other toxins during this employment.[38]

Dr. Harrison did not indicate in either his report or during his deposition that before he reached his conclusion he reviewed any other information

---

[35]     R. Doc. 50-17 at 10.

[36]     *Id.*

[37]     R. Doc. 58 at 12.  Dr. Harrison indicated during his deposition that he reviewed these interrogatories before coming to his conclusion in this case. *See* R. Doc. 50-16 at 60 (testifying that to form his opinion he reviewed plaintiff's "court documents").

[38]     R. Doc. 58-9 at 26.  It is evident from Dr. Harrison's deposition testimony that he is aware this work lasted for six weeks.  R. Doc. 50-16 at 65.

specifically related to plaintiff's alleged exposure aboard the AVOCET.[39]  Dr. Harrison in fact conceded that he never reviewed any of plaintiff's deposition transcripts in any of his cases.[40]

Dr. Harrison's specific causation opinion is inadmissible under Federal Rule of Evidence 702(b).  *See* Fed. R. Evid. 702(b) (expert's testimony must be "based on sufficient facts or data").  To show specific causation in a toxic torts case, a plaintiff must present "scientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities."  *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 670 (5th Cir. 1999).  The law does not require a plaintiff to show the precise level of his exposure to the toxic substance in order to hold a defendant liable.  *Id.* at 671.  Likewise, for an expert's specific causation opinion to be reliable, the opinion need not include a calculation of the precise level of the plaintiff's exposure.  *Id.*  But Rule 702(b) requires an expert to base his opinion on sufficient information about the circumstances or level of the plaintiff's exposure attributable to the defendant's negligence that goes beyond a general

---

[39]    Dr. Harrison testified that before he filed his report he had spoken to plaintiff about his occupational history.  *Id.* at 43, 60.  But Dr. Harrison does not identify any more specific information about the nature or circumstances of plaintiff's work on the AVOCET that he learned from these direct conversations.

[40]    *Id.* at 30.

statement that the plaintiff was exposed to some amount of a toxic substance. *Moore*, 151 F.3d at 278-79 (finding that because an expert had "no accurate information on the level of [the plaintiff's] exposure to fumes," he had no support for his specific causation opinion); *Seaman v. Seacor Marine LLC*, 326 F. App'x 721, 727-28 (5th Cir. 2009) (representation to expert that plaintiff had been exposed to harmful substances "at least once a week, twenty-six weeks per year, over more than a decade" was not a sufficient amount of information for expert to render reliable causation opinion); *Curtis*, 174 F.3d at 671 (expert's causation opinion admissible when he relied upon estimates of exposure levels, work practices at the refinery where plaintiff was exposed, design of the refinery, and nature of the symptoms experienced by a number of workers); *see also Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 198-99 (5th Cir. 1996) (finding that expert opinion failed to satisfy Fed. R. Evid. 703 because expert's "background information concerning [plaintiff's exposure was] so sadly lacking as to be mere guesswork").

The only information that Dr. Harrison considered about plaintiff's alleged exposure aboard the AVOCET was the one sentence in his report—pulled from plaintiff's California interrogatories—that plaintiff was on a dredge for a total of six weeks, during which he "worked under asbestos insulated pipes that vibrated, depositing asbestos containing dust on and in

close proximity" to him.[41]  This lone sentence does not provide a sufficient amount of information for his opinion to be reliable.  There is no indication that Dr. Harrison considered the type of asbestos plaintiff may have been exposed to or its concentration.  Nor does this statement allow him to make a sufficiently reliable estimate about the amount, duration, or frequency of plaintiff's alleged exposure.  The sentence does not explain the length of time each day he was working under vibrating pipes, how often the pipes vibrated, how much dust was dislodged, or how much of the dust he may have actually inhaled.[42]  Dr. Harrison simply speculates from this one sentence that plaintiff was exposed to an amount of asbestos sufficient to cause him to contract mesothelioma even if he were never exposed elsewhere.  But an expert cannot base his opinion on such speculation.  *Daubert*, 509 U.S. at 590 (Rule 702 precludes expert from relying upon "unsupported speculation"); *Seacor Marine LLC*, 326 F. App'x at 728 (expert opinion unreliable when based upon statement that plaintiff was exposed to toxic substances "at least once a week, twenty-six weeks per year, over more than a decade," but expert "had no information about the amount of exposure to

---

[41]     R. Doc. 50-17 at 10; R. Doc. 58-9 at 26; R. Doc. 50-16 at 60.
[42]     R. Doc. 58-9 at 26.

which [the plaintiff] was subjected" over this time period, or the "duration, concentration, and other circumstances of the exposure").

In *Vedros v. Northrop Grumman Shipbuilding, Inc.*, the court excluded an expert's specific causation opinion in part because the expert did not rely upon a sufficient qualitative evaluation of the plaintiff's history of asbestos exposures. 119 F. Supp. 3d 556, 564-65 & n.5 (E.D. La. 2015). In doing so, the court contrasted the expert's opinion with an expert opinion rendered in a Louisiana state court case. *Id.* In the state court case, the expert had considered "'the nature of exposure, the level of exposure and the duration of exposure, whether a product gives off respirable asbestos fibers, whether a person was close or far from the source of fiber released, how frequently the exposure took place, how long the exposure lasted, whether engineering or other methods of dust control were in place, whether respiratory protection was used, the chemistry and physics of asbestos fibers, the pathophysiology of breathing, the movement of asbestos fibers in the lung, the molecular pathology of tumor development, and other scientific disciplines.'" *Id.* (quoting *Robertson v. Doug Ashy Bldg. Materials, Inc.*, 168 So. 3d 556, 569 (La. App. 1 Cir. 2014)). Like the expert in *Vedros*, Dr. Harrison does not rely upon this type of information regarding plaintiff's

alleged exposure. As a result, his opinion is unreliable under Fed. R. Evid. 702(b) and inadmissible.

The deficiencies in Dr. Harrison's opinion are further amplified by the 2015 Markowitz study he relied upon. During his deposition, Dr. Harrison pointed to a table in the Markowitz study and suggested it supports his conclusion that plaintiff's exposure aboard the AVOCET would be sufficient to cause someone to develop mesothelioma.[43] But the table contains information on exposure levels in terms of fibers per milliliters a year, and concludes from the data that even relatively low doses of occupational exposure can increase one's risk of developing mesothelioma.[44] The table is not relevant to Dr. Harrison's opinion because it contains quantitative data on exposure thresholds, and Dr. Harrison has no basis to make a quantitative comparison of plaintiff's exposure to the Markowitz data.[45] Dr. Harrison simply infers from plaintiff's statement in his interrogatories that he necessarily had the exposure levels seen in the Markowitz table. But that

---

[43]    R. Doc. 50-16 at 69.

[44]    R. Doc. 59-15 at 3.

[45]    Dr. Harrison stated during his deposition that the Markowitz study supports a finding that there is a "statistically significant increased risk of mesothelioma" from low levels of exposure. R. Doc. 50-16 at 40. To the extent Dr. Harrison opines here that plaintiff's exposure on the AVOCET was "statistically significant," there is no basis for that conclusion because Dr. Harrison did not have sufficient information regarding the circumstances of plaintiff's exposure prior to formulating his opinion.

logical leap is unwarranted from the "paucity of facts" Dr. Harrison had before him. *Moore*, 151 F.3d at 278 n.10; *Seacor Marine LLC*, 326 F. App'x at 728.

The inadequate amount of information Dr. Harrison had when he formulated his causation opinion is a consequence of larger problems with plaintiff's case. To establish that there was asbestos on the AVOCET in his opposition to DBMC's motion for summary judgment,[46] plaintiff cites to (1) his own lay testimony that he saw asbestos dust while aboard the AVOCET;[47] (2) testimony from two individuals who were once on the AVOCET, who stated that they saw grey and brown insulation around the exhaust pipes in the engine room;[48] and (3) a report from plaintiff's expert marine surveyor, Ralph Bruni, who opined that the AVOCET was built during a period in which the use of asbestos was widespread, and that the color of the insulation identified by the witnesses was consistent with "fibrous asbestos."[49] Plaintiff does not have any other evidence to establish asbestos was even present at plaintiff's worksite, let alone evidence regarding the type of asbestos he may

---

[46]    R. Doc. 64.
[47]    R. Doc. 64-1; R. Doc. 64-2; R. Doc. 64-3.
[48]    R. Doc. 64-5; R. Doc. 64-6.
[49]    R. Doc. 49-3 at 9.

have been exposed to, the properties of the asbestos fibers, or his possible exposure levels.

Dr. Harrison arrives at his specific causation conclusion with these insufficient facts only because he applies a methodology that has been found unreliable by a number of other courts. *See Comardelle v. Pa. Gen. Ins. Co.*, 76 F. Supp. 3d 628, 634 (E.D. La. 2015); *Vedros*, 119 F. Supp. 3d at 563; *Bell v. Foster Wheeler Energy Corp.*, No. 15-6394, 2016 WL 5847124, at *3 (E.D. La. Oct. 6, 2016). Dr. Harrison's use of this unreliable methodology is a separate reason his testimony must be excluded. *See* Fed. R. Evid. 703(c) (expert testimony must be "the product of reliable principles and methods").

Dr. Harrison reasons that because "each and every" asbestos exposure increases one's risk of developing mesothelioma, plaintiff's alleged six-week exposure aboard the AVOCET caused his disease.[50] This method of finding specific causation has been rejected because it equates an increased *risk* of contracting the disease with a finding that any exposure was in fact the cause. *Comardelle*, 76 F. Supp. 3d at 635. In doing so, the methodology is "not based on or tied to the specific facts and circumstances" of a plaintiff's exposures, and "elides any differences or nuances of duration, concentration, exposure, and the properties of the fibers to which he may have been

---

[50] R. Doc. 50-16 at 64-65.

exposed." *Id.* at 634. The methodology in effect eliminates the specific causation requirement in toxic tort cases by concluding from any amount of asbestos exposure that a defendant must be liable *in this case.* *See Knight*, 482 F.3d at 351 (requiring a plaintiff to show specific causation). Dr. Harrison in fact conceded during his deposition that his opinion is consistent with an opinion that exposure to one additional asbestos fiber could constitute a specific cause of plaintiff's mesothelioma.[51]

Plaintiff contends that Dr. Harrison has employed the same methodology as the expert in *Michel v. Ford Motor Company.* *See* No. 18-4738, 2019 WL 118008, at *2 (E.D. La. Jan. 7, 2019). But that is not accurate. In *Michel*, the expert offering causation testimony relied in part on the plaintiff's expert industrial hygienist, who estimated the plaintiff's exposure levels by analyzing the amount of asbestos released into the air during the plaintiff's mechanical work. *Id.* at *2, 8. The plaintiff's causation expert then used a "semiquantitative" analysis to arrive at his opinion that exposure to each of the defendants' products caused the plaintiff's disease. *Id.* at *5. In that analysis, the expert compared the nature and circumstances of each of the plaintiff's exposures, all of which covered periods of more than one year.

---

[51] *Id.* at 38 ("Q: Is there any such thing as a nonsignificant or insignificant exposure to asbestos for purposes of mesothelioma causation, in your opinion? A: There is not.").

*Id.* at *3, 5.  The expert in *Michel* thus had far more information regarding the plaintiff's alleged exposure levels when forming his opinion, and he applied to those facts a methodology that was more rigorous than the "each and every exposure" theory, which he expressly disclaimed.  *Id.*

Finally, plaintiff argues that the Court's evaluation of the reliability of Dr. Harrison's causation opinion should be impacted by the fact that this is a Jones Act case, where the burden for proving causation is lower than in a case applying state law.[52]  But the Fifth Circuit has rejected this very argument, stating that "[t]he reduced burden of establishing proximate cause in Jones Act cases is irrelevant" to questions of expert admissibility under Federal Rule of Evidence 702.  *Seacor Marine LLC*, 326 F. App'x at 728 n.41 (internal citation omitted).  Instead, "[t]he standards of reliability and credibility to determine the admissibility of expert testimony under *Daubert* and Rule 702 apply regardless of whether a seaman's burden on proximate causation is reduced."  *Id.*; *accord Wills v. Amerada Hess Corp.*, 379 F.3d 32, 47 (2d Cir. 2004).  The "paucity of facts" Dr. Harrison relied upon to come to his conclusion—and the unreliable methodology he used with those facts—render his opinion unreliable to prove *any* causal link

---

[52]  R. Doc. 58 at 2 (citing *CSX Transp., Inc. v. McBride*, 564 U.S. 685 (2011)).

between plaintiff's time aboard the AVOCET and his illness. *Seacor Marine LLC*, 326 F. App'x at 727-28; *Moore*, 151 F.3d at 278 n.10. The causation burden for plaintiff's claim is thus irrelevant to a determination of his opinion's admissibility.

Dr. Harrison is excluded from offering any testimony at trial related to specific causation.

### B. Motion to Exclude Dr. David Tarin's Testimony

Plaintiff's expert Dr. David Tarin also seeks to offer a specific causation opinion at trial. But Dr. Tarin's specific causation opinion is substantially similar to Dr. Harrison's and must be excluded for the same reasons.

In his report, Dr. Tarin opines first that "cumulative exposure to all forms of [asbestos] contributes to the induction and propagation" of plaintiff's diagnosed disease—*i.e.*, general causation.[53] Dr. Tarin concludes from this principle that "all of [plaintiff's] asbestos exposure should be considered a contributing factor in the development of his asbestos-related malignancy"—*i.e.*, specific causation.[54] During his deposition, Dr. Tarin

---

[53] R. Doc. 52-8 at 5.

[54] *Id.* DBMC argues that Dr. Tarin should be excluded from testifying as to specific causation at trial because he did not include a specific causation opinion in his expert report. R. Doc. 88 at 5-6. But an opinion that "all" of plaintiff's asbestos exposure should be considered a cause of his disease is a specific causation opinion tailored to DBMC. "All" of plaintiff's exposure necessarily includes his alleged exposure aboard the AVOCET.

explained that when referring to "cumulative exposure," he means that "the people that get more exposure are more likely to get [a] disease than those who do not."[55]  When asked specifically whether plaintiff's time aboard the AVOCET caused him to contract mesothelioma, Dr. Tarin responded that "[t]he probability is high that that exposure would have contributed."[56]

The only information in Dr. Tarin's report at all connected to plaintiff's time aboard the AVOCET is one paragraph cataloguing all of plaintiff's work history over a forty-year period, which does not isolate the time plaintiff spent on the AVOCET or specifically identify this exposure experience:

> [F]or many years (1964-2002) [plaintiff] worked in merchant shipping-related jobs on many named vessels, where he was assigned duties including maintenance of brakes, loading cranes, winches and engines.  Plaintiff assisted and was close in proximity to pumpmen as they removed asbestos-containing gaskets and packing from pumps.  Most, but not all, of this work was done above deck, but the plaintiff occasionally worked below decks in engine rooms and lived onboard ships while they were underway.  During such journeys, he slept beneath asbestos insulated pipes that vibrated as the ships that he worked on were underway, depositing asbestos containing dust on and in close proximity to him.[57]

Dr. Tarin testified at his deposition that he also reviewed plaintiff's answers to his interrogatories.[58]  But like Dr. Harrison, Dr. Tarin admitted that he

---

[55] R. Doc. 52-5 at 85-86.
[56] *Id.* at 87.
[57] R. Doc. 52-8 at 3; R. Doc. 59 at 12.
[58] R. Doc. 52-5 at 83.

never reviewed plaintiff's deposition testimony in any of his cases.[59]  Dr. Tarin thus had, at best, the same information as Dr. Harrison when he formulated his causation opinion.  As already discussed, this information is not sufficient to offer a reliable specific causation opinion, even in a Jones Act case.  *Moore*, 151 F.3d at 278 n.10; *Curtis*, 174 F.3d at 670; *Seacor Marine LLC*, 326 F. App'x at 727-28 & n.41.  And in addition, Dr. Tarin employs the same "each and every" exposure theory as Dr. Harrison, which is unreliable here for the reasons already discussed.

Finally, Dr. Tarin stated in his report that some of plaintiff's pathology slides are "consistent" with a "heightened susceptibility to the well-recognized carcinogenic action of asbestos."[60]  But this conclusion is not sufficient to remedy the unreliability of his specific causation opinion.  First, Dr. Tarin merely concludes that plaintiff's pathology slides with regards to the BAP-1 protein were "consistent" with a higher susceptibility.[61]  Concluding from this finding that plaintiff does in fact have this higher susceptibility is unduly speculative.  *See Daubert*, 509 U.S. at 590.  Second, even if plaintiff does have a higher susceptibility, and even if this conclusion is based upon a reliable methodology, Dr. Tarin still does not base his specific

---

[59]  *Id.* at 28-29.
[60]  R. Doc. 52-8 at 6; *see also* R. Doc. 59 at 19-21.
[61]  R. Doc. 52-8 at 6.

causation opinion on a sufficient amount of information related to plaintiff's alleged exposure aboard the AVOCET.

Dr. Tarin is also excluded from offering a specific causation opinion at trial.

### C.    Motion for Summary Judgment

The Jones Act "provides a cause of action in negligence for 'any seaman' injured 'in the course of his employment.'" *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354 (1995) (quoting 46 U.S.C. § 30104).  A maritime negligence action has essentially the same elements as common law negligence: a plaintiff must "demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury."  *See Canal Barge Co., Inc. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000).  As already addressed, the causation requirement under the Jones Act is liberal. "If the defendant's negligence played any part, however small, in producing the seaman's injury, it results in liability."  *Brister v. A.W.I., Inc.*, 946 F.2d 350, 354 (5th Cir. 1991); *see also Chisholm v. Sabine Towing & Transp. Co., Inc.*, 679 F.2d 60, 62 (5th Cir. 1982) ("Defendant must bear responsibility if his negligence played any part, even the slightest,

in producing the injury."). Even under this standard, however, "cause . . . is still a necessary ingredient of liability." *Chisholm*, 679 F.2d at 62.

Plaintiff must rely on expert testimony to prove causation at trial. *See Seacor Marine LLC*, 326 F. App'x at 723 ("Scientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiffs' burden in a toxic tort case."); *see also Davidson v. Ga. Pac. LLC*, No. 12-1463, 2014 WL 3510268, at *7 (W.D. La. July 14, 2014) (granting defendant's motion for summary judgment after excluding plaintiff's expert's opinion addressing specific causation), *vacated on other grounds*, 819 F.3d 758 (5th Cir. 2016). The only experts for plaintiff who have put forth a specific causation opinion are Dr. Harrison and Dr. Tarin.[62] These expert reports are the only causation evidence plaintiff identified in his opposition to DBMC's motion for summary judgment.[63] Because the Court has excluded these opinions, plaintiff is incapable of proving the causation element of his Jones Act claim at trial, and summary judgment for DBMC is proper.

---

[62]    *See* R. Doc. 50-3 (Plaintiff's Amended Expert Disclosures).
[63]    *See* R. Doc. 64 at 11.

## IV.  CONCLUSION

For the foregoing reasons, DMBC's motions to exclude the testimony of Dr. Robert Harrison and David Tarin are both GRANTED IN PART.  Both experts are excluded from offering specific causation opinions.  DBMC's motion for summary judgment is GRANTED.  All other pending motions are DISMISSED AS MOOT.  Plaintiff's claim is DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this __5th__ day of February, 2019.

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE